SEWALL *versus* FRANLIN, et. al.

.The bond, authorised by statute, on the replevy of property taken .in attachment, must be payable to the sheriff, not to the plaintiff in the attachment.

Bonds, voluntarily executed to civil officers, in relation to judicial proceedings, though invalid as statute bonds, may, if they contain valid and sufficient consideration, be available as Common Law bonds.

But where a sheriff, having attached the goods of A, at the suit of B, delivered them to C. and D, who did not appear to be the agents, attorneys or factors of the defendant in the attachment, or acting under his authority ; and took ·their bond, payable to B, conditioned, for the return of the goods to the said sheriff, or for the payment of such judgment as might be had in the attachment cause: in debt brought upon the bond by B, held—that the bond was not recoverable, either as a statute, or Common Law obligation.

This case, was an action of debt, brought by Sewall, against the defendants in error, in the Circuit Court of Mobile.

The cause of action was a bond executed ¦by defendants, and made payable to the said Sewall, conditioned, for the return of certain property to one Bates, sheriff of Mobile, or for the payment of such judgment as should be rendered in a certain attachment cause, under which, the goods had been taken.

It appeared, that Bates, the sheriff, had attached the goods, as of the property of one Stowe, at the suit of Sewall; and had delivered them to the defendants, and taken the above mentioned bond for their delivery, &c.

It was plead by the defendants, in defence of the action, with other pleas, that the bond had been executed under the above named circumstances, and was not intended to be delivered to the plaintiff: also, that neither the said goods, or the amount of the judgment, had been demanded of the defendants, &c.

SEWALL *vs.* FRANKLIN, et al.

On demurrer to the plea, the Court below rendered judgment for the defendants, and the case was brought into this Court, by writ of error, on the question of the sufficiency of the bond.

GOLDTHWAITE, for Plaintiff—HOPKINS, *contra.*

By Mr. Chief Justice SAFFOLD:

This was an action of debt, founded on a bond in the penal sum of twenty-eight thousand dollars, payable to the plaintiff; and conditioned, that whereas, said plaintiff had obtained an attachment in his favor, against the estate of *Daniel Stowe,* in the sum of fourteen thousand dollars, and which had been levied by James P. Bates, sheriff of Mobile county, on certain goods therein specified; therefore, if the obligors should well and truly return, and cause to be returned to the said James P. Bates, as sheriff aforesaid, the specified property, by him attached as aforesaid; or pay and satisfy such judgment as might be rendered in the attachment cause, then the obligation to be void, else to remain in full force. The declaration further avers, that afterwards, at a term of the Circuit Court, the plaintiff recovered judgment against said Stowe, for ten thousand seven hundred and eighty four dollars and three cents, on which a *fi. fa.* was sued out, directed to the sheriff of said county, commanding him, that of the goods, &c. of Stowe, he should make the said sum of money; and on which, said sheriff returned *nulla bona.* It is further averred, that said defendants did not return the property " to the sheriff of Mobile county," nor have they, or either of them, paid or satisfied said judgment.

To the declaration, as above, the defendants pleaded—

1. *Nul tiel record,* on which issue was taken.

2. A special *non est factum,* because, the writing obligatory, if any such there be, was placed by the defendants, in the hands of J. P. Bates, then sheriff of the county of Mobile, who had, under color of, and by virtue of his office, before then, levied said attachment upon said goods, and had taken the same from the possession of said J. T. Franklin, and that the said writing obligatory, was to be retained by him the said sheriff in his official capacity, during the pendency, and until the final determination, of said suit of attachment; and that the same was to be re-delivered to them, the said defendants, by the said sheriff, on their returning said goods to him : that said supposed writing obligatory never was delivered by said defendants, or either, or by any person for them, or by their authority, to the plaintiff; and that it never was intended by the defendants, or the said sheriff, that said writing ever should be delivered to the plaintiff; that if the instrument ever was delivered by the sheriff, or by any one else, to the plaintiff, the same was without the knowledge, privity or consent of the said defendants, or either of them. They further aver, that said sheriff did not, in his life-time, nor has his successor or successors in office, or any one since his death, ever demanded of the said defendants or either, the re-delivery of said goods; nor were they ever notified by said sheriff, or his successor, or by the plaintiff, that the suit was terminated; and that no demand has ever been made by the plaintiff, or by any one else, of the amount of the supposed judgment; and so they say the said writing is not their deed.

3. That the goods mentioned in the plaintiff's declaration were of no value.

To the second and third pleas, the defendants demurred. The Court sustained the 2d plea, and thereupon gave judgment for the defendants ; to reverse which, the plaintiff prosecutes this writ of error.

Overruling the demurrer to the second plea, is the cause assigned for error.

The second plea contests the validity of the bond, not on the ground of illegality, or want of a good and sufficient consideration, but that it was never consummated as a bond, to the plaintiff, for the want of delivery to him by the defendants, or any one under their authority. So far as the averments of this plea are in conflict with the expressions, or legal deductions arising on the face of the instrument, I would admit, that the defendants are estopped from contesting them. To what extent the objects of the bond as disclosed by the condition, and the allegations of the declaration are irreconcileable with the facts of the plea, I will not stop particularly to enquire. It is, however, a fair inference that the property which it was the object of this bond to release, was in the possession of the sheriff Bates, by virtue of a levy of execution, so that without his agency or assent, or a tort upon his rights, the object could not have been effected. The presumption, therefore, is, that it was executed and delivered to him for this purpose. If then it was taken by him, why was it drawn payable to the plaintiff and conditioned for the return of the property to said *Bates as sheriff?* The answer would appear to be, that it was considered a statute bond taken by the sheriff in virtue of his office. Then the farther question arises, whether as the bond grew out of a judicial proceeding, was taken by the sheriff in virtue of his office, and intended as

a statute bond, it can be enforced as an individual transaction, as a bond valid at Common Law, subject to recovery by action of debt; also, if thus recoverable, does the present declaration contain the necessary allegations?

These latter views of the subject are necessarily presented by the demurrer to the pleas. The principle, that a demurrer to any subsequent part of the pleading, may be referred to the antecedent pleadings, so that the plaintiff's demurrer to the defendant's plea, may be visited on the declaration; and that a bad plea is sufficient for a defective declaration; is too well settled, to require comment. Objection is urged in argument, for the defendant in error, against the sufficiency of the declaration, on the ground, that the bond is conditioned for the return of the property to *James P. Bates as sheriff of Mobile county ;* and that the breach alleged in the declaration is, that the defendant failed to return the property " to the sheriff of Mobile county," or pay the judgment. This discrepancy is found to exist; and it is also true, that the declaration contains no averment that the property belonged to *Daniel Stowe ;* nor is there any allegation that it was subject to the execution, or any other averment from which injury would necessarily result as a consequence of a failure to return the property—there is no averment that the defendants, or either, received possession of the property, or any other consideration, or adequate inducement, for entering into the bond. The stipulation that the obligors would return the property, or *cause* it to be returned, affords no sufficient implication that they claimed any interest in it, or that they took and detained it from Stowe, or other rightful owner. Then the giving the bond by the defendants may have

been merely a gratuitous act. A *statute bond* given in the manner prescribed, without consideration, other than as security, or as the means of replevying property which the party or parties are authorised by law to do, is unquestionably valid, without scrutiny into the loss or injury accruing to the obligee, or benefit to the obligors. It is not however, contended, that this is such bond, though it may have been so intended. As a statute bond, it is invalid on the ground of its not having been executed by the defendant in the attachment, or any one as agent, attorney or factor for him according to the principle decided in *Cummins and Foster* vs. *Gray.*[a] The same statute was in force when both bonds were given, and is equally applicable to both cases,[b] though perhaps subsequently repealed.[c] It is also insufficient as a statute bond, in as much as it is made payable to *the plaintiff* in attachment, instead of the *sheriff*, in whose name replevy bonds are required to be taken.[d]

But it is contended, that this bond, though insufficient under the statute, is valid as a Common Law bond, and that this action is sustainable upon it as such. In support of this position, reference is made to the case of *Worsham* vs. *Egleston.*[e] In that case a forthcoming bond was given for property levied upon by *fi fa.* The condition of the bond recited the amount of the execution, *including the sheriff's commissions;* the District Court gave judgment on the bond accordingly. The Court of Appeals reversed the judgment on this ground, and rendered judgment for the true amount, *excluding* the commissions, to which, under the circumstances, he was not entitled. The defect in that bond, was only by way of recital in the *condition,* which was not supposed to vitiate it. Whether the bond was good under the statute, or the

[a] June Term 1833.

[b] Toul. Dig. 17 sec. 14.

[c] Act of 1833, Aik. Dig. 40 § 11. id. 41. § 13

[d] 1 Stew. 130.

[e] 1 Call, 41.

Common Law, was not decided or made a question. We are also referred to *Beale* vs. *Dawnman.*[a] There, debt was brought on a forthcoming bond, payable to the sheriff, instead of the creditors, as required by statute; the plaintiff obtained judgment on the plea of *non est factum.* In the prosecution of errors thereon, it was assigned for causes. 1. That the bond was not taken according to law. 2. That the remedy was by motion. The Court of Appeals remarked only, that the assignments were in conflict ; that the first, if true, removed the only objection to the second ; and therefore overruled both. In *Johnson* vs. *Meriwether,*[b] a similar decision was made; judgment was rendered, without any reasons being expressed in support of the decision. But a main point urged in the argument was, that an earlier act which remained unrepealed, authorised such bonds to be given to the sheriff or other officer serving the execution ; that under the several statutes *in pari materia,* the parties were at liberty to make the bond payable to the officer, and recoverable in the action of debt ; or to the creditor, and recoverable on motion. If such were the views which governed these cases, the principle has no application to the case before us. But in *Hoe* vs. *Tibbs,*[c] it was held, that a *prison bounds bond,* though void under the statute, being payable to the plaintiff instead of the sheriff, might be good at Common Law ; and such the Court then understood to be a principle decided in *Johnson* vs. *Meriwether.--Hewlett* v. *Chamberlayne;*[d] *Scott* v. *Hornsley;*[e] *Bell & Harrison* v. *Marr;*[f] *Wilkerson* v. *McLocklin & Co.;*[g] also, *Sugg* v. *Burgess & Davis.*[h]

In *Morse* vs. *Hodsdon,* et. al.[i] a plaintiff in replevin (being required to do so by the coroner to whom the writ was directed) gave his bond with security, conditioned to prosecute his said replevin to final

a 1 Call, 219.

b 3 Call, 454.

c 1 Munf. 500.

d 1 Wash. R. 367.
e 1 Call, 35.
f Id. 40.
g Id. 42.
h 2 Stew. 509.
i 5 Mass. R. 314.

judgment, *and recover the said goods ; else the bond to be in full force.*   The statute required a bond with .condition only, that the plaintiff should *prosecute, and also make return and pay damages if judgment be against him.*   In debt on this bond, the Court held, that as it had been voluntarily given, and the obligors were by statute entitled to relief against the penalty on payment of the just damages, the bond in that way was no more prejudicial to them, than one with condition in due form would. have been ; and that as the bond was to be considered good unless declared void by the Common Law or statute, and they knew of no law by which it was made void, it was to be considered valid.   In *Clap, administrator* vs. *Cofran,*[a] the action was debt on a bond given by a prisoner and his securities for the liberty of the Jail yard, in which, by statute, the penalty should have been in double the amount of the judgment, for the satisfaction of which he was imprisoned, but this was for a less sum.   This objection being pleaded in bar, and the plea demurred to, the Court remarked, that the wrong sum was probably inserted through an error in computation and not from design.   That the sheriff was liable as in case of an escape, the bond not being in pursuance of the statute, consequently no justification to the officer for permitting the liberty ; yet, that the plea in bar was bad : and that the defendants could be relieved against the penalty by a judgment for the true amount of the debt.

The annotator to Saunders,[b] maintains the following propositions.   That " a bond to save the sheriff harmless from *escapes* is against law ;[c] but a bond to pay money into Court at the return of a *fi. fa.* is good, for though it be done by colour of office, and the condition is not according to the statute, yet it is valid, the statute extending only to bonds given by or for

[a] 7 Mass. R. 98.

[b] 1 Rep's. 161, note 1.

[c] Stat. 23 Hen. 6.

*prisoners.* So a bond to save a sheriff harmless a-
gainst a false return of a *fi. fa.* is good. If any
thing is added to the condition prescribed in the act,
which is not legal, that which is inserted against the
form of the act, avoids all the rest. But if a bond be
taken in a circumstance contrary to the provision of
the statute that is only prescribed *for the direction of
the sheriff*, as to take sureties, which is for his safety ;
or if any thing is required *specially* by the condition,
that the act only *imports*, but does not literally *re-
quire*, such variations do not hurt."

In *Syme* vs. *Griffin*,[a] the action was debt on a *pri-* [a] 4 Hen. & M.
*son bounds* bond, conditioned that the debtor should 277.
keep within certain prescribed bounds, until he should
discharge the debt and costs, and save the sheriff
harmless; when the legal condition, as prescribed,
was simply, " that he should not depart or go out of
the rules or bounds of the prison to which he was
committed." In that state, is the farther statutory
provision, that " every obligation by any sheriff taken
in *other manner*, or form by color of his office, shall
be null and void; except in any special case, any
other obligation is, or shall be by law, particularly
and expressly directed." The Court said the ques-
tion there was, whether the conditional words in the
bond in question imported a substantial condition
beyond that which the law authorised? They consider-
ed such to be the effect of the superadded words;
consequently that the bond was void; and that every
bond taken in such manner as to induce or encour-
age neglect of duty in a public officer, as void by the
common law.

The case of the *brig Alligator*,[b] has been referred [b] 1 Gallis. 145
to on the part of the plaintiff in error. That was a
case of *libel*, in the admiralty, where the articles seis-

ed, had been delivered on bail, by order of the Court, the claimant being bound to respond to the appraised value in case of final condemnation. It did not appear that any statute existed, authorising the delivery on bond: but Judge *Story*, before whom the trial was had, remarked, that no doubt had previously existed respecting the right of that Court to take such bonds, or to grant judgment, and award execution thereon in the usual summary manner. He also said, whether there was any statute existing, which authorised the delivery on bond, or not, he did not think material : that it being in a civil cause of admiralty and maritime jurisdiction, nothing could be better settled, than that the admiralty could take a *fidejussory* caution, or stipulation in cases *in rem*, and may, in a summary manner, award judgment and execution thereon. Again, it is said, a bond taken in such case, even supposing it void as such, which he did not admit, might be good as a stipulation : that in all cases of that nature, the security, whatever be its form, is taken by order of Court, upon the voluntary application of the party, and therefore is *apud actu*—that having jurisdiction of the principal cause, the Court must possess jurisdiction over all the incidents, and may, by monition, attachment, or execution, enforce its decrees against all who become parties to the proceedings. The principles of this decision, appear to have been materially influenced by the extraordinary powers of the admiralty, analagous to those of chancery, and the fact, that such bonds, are given *voluntarily*, and in pursuance of an order of the Court ; also by the consideration, that jurisdiction over the principal cause, and the practice of the Court in other respects, gave it jurisdiction over all the incidents. This doctrine is farther illustrated by the

case of *Respublica* vs. *Lacaze, et al.*. The action was [a2 Dallas, 118.] debt on a bond, taken in the Court of Admiralty of *Pennsylvania*, in the nature of a caution or stipulation. Chief Justice *McKean,* in delivering the unanimous opinion of the Court, said, " Although a Court of Admiralty could not take a recognizance, which is a bond or obligation of record, (the Court not being one of record,) yet it could take a caution or stipulation, which is usually for appearance, or to perform a decree, &c. and is in the nature of a recognizance ; that there was no positive law for declaring such a writing void, it was not given for any thing against *good morals,* or *illegal,* but for a *meritorious valuable consideration ;* that if the taking the writing in Court could not give it any additional sanction, so, on the other hand, it could not destroy or prejudice its legal operation ; that though void as a stipulation, it was good as a contract—just as was determined in the case of *Ascue* vs. *Hollingsworth.*[b] Further, he [bCro.Eliz.544.] remarked, that an instrument void as a stat. staple, may be good as an obligation ; and that the case in 2 *Strange,* favored the principle; therefore, he thought the transaction in question might be considered as done *out of Court,* and that it was good and binding on the parties by the *Common Law.*

From this review of authorities, it appears that bonds taken by civil officers, and in relation to judicial proceedings, though without the authority of our statute, (like bonds between individuals, under other circumstances) if they appear to have been given on valid and sufficient consideration, such as is neither illegal or immoral, may be good as common law bonds. This principle is farther sustained by the case of *Lampton* vs. *Taylor.*[c] There, a slave had [aLittell's sel'd Cases, 273.] been levied on by virtue of a *fi. fa.* and claimed by

a third person, and by the sheriff, left in the hands of the claimant. At the request of the plaintiff in execution, the sheriff summoned a jury to try the right of property, who found in favor of the claimant. Upon this, the plaintiff executed a bond of indemnity, such as required by law, to justify the sheriff in selling the slave. The claimant refused to surrender the slave to be sold, but executed to the sheriff a bond of indemnity, against all suits and demands, for not selling the slave; all these circumstances were recited in the condition. On this bond, the action of debt was brought, the declaration stating all the facts, and averring a breach of the condition. The validity of the bond was considered, on demurrer to the declaration, in the *Court of Appeals, in Kentucky.* The Court adjudged the bond *valid,* on the principle that it was not taken as a consideration or inducement to the sheriff to neglect or violate his official duty, but as an indemnity for not selling when he was incapable of doing so, by reason of the claimant's refusal to deliver the property; that it was the privilege of the sheriff to constitute the claimant, or any other, his bailee of the property, pending the claim, and he was not bound to anticipate this refusal to surrender, and without which he could not sell. The question was considered materially different from what it would have been, had the sheriff retained the possession of the slave until the plaintiff in execution had tendered his indemnifying bond, and then having the authority to sell, instead of doing so, had taken the bond from the claimant as an indemnity for his neglect of duty. That Court recognise, as a general rule, " that wherever the consideration which is the ground of the promise, or the promise, which is the consequence or effect of the consideration, is unlawful, the whole

contract is void" at Common Law. They admit
some exceptions, such for instance, as an indemnify-
ing bond to a sheriff for taking in execution pro-
perty not subject to the writ; or for not selling pro-
perty levied on, and claimed by such obligor. I ap-
prehend, however, that these exceptions, if they can
be considered such, rest on the doubt respecting the
true title, and are not to be regarded as contracts for
palpable violations, or neglect of duty.

In the case before us, nothing appears of record
disclosing any criminal or vicious motive in the trans-
action, though *stricti juris*, the replevin by an in-
different person, was there unauthorised. The
only injury that could result from the act, was, that
the defendant in the attachment, or some claim-
ant of the property, may have been deprived of their
right to replevy. But as there is nothing of record
shewing that the defendant was thus injured, or that
the replevy was not by his friends, and intended for
his benefit; or that any other person had, or wished
to interpose any adverse claim, we can not assume
the facts. On the contrary, as the record does not
disclose the circumstances, so as to shew what dis-
position was made of the property—whether it was
subject to the execution, or what was the motive or
inducement of the defendants for entering into the
bond; no sufficient consideration to sustain it, is ei-
ther expressed or implied. It would seem, at least,
that this uncertainty should have been supplied by
the necessary averments in the declaration. But
other views of the case, to which allusion has alrea-
dy been made, interpose farther obstacles to the reco-
very, as here sought; the most material of which, is,
the discrepancy between the condition of the bond,
and the breach assigned—the former being, that the ob-

ligors would return the goods "to the said James P.
Bates, as sheriff aforesaid,"—the latter, that they did
not return them *to the sheriff of the county;* who, at
the time of the alleged breach, must have been a dif-
ferent person. The bond was given in April, 1827:
the return of *nulla bona* was in April, 1831, four years
subsequent—a time at which Bates, (if living, and it
seems he was not,) must, by the constitution, have
been ineligible to the office. If the writing obligato-
ry, could be viewed as a recognizance, taken by the
sheriff in the regular discharge of his office, and
therefore, incident to the cause; the effect of the con-
dition in the bond, might only have been, to deliver
the property to the *sheriff for the time being,* regard-
less of the individual incumbent. But viewing this
instrument in its most favorable light, as a common
law bond, the legal intendment does not apply.—
When regarded as a private transaction, the indivi-
duals concerned must be considered *material;* there-
fore, an obligation to deliver property to James P.
Bates, as sheriff, does not necessarily imply, an obli-
gation to deliver to *T. L. Toulmin,* as sheriff. For
aught we can know, Bates may have been sheriff *de
facto,* the other, *de jure,* at the time the bond was
given; and the former may have remained the same,
and received the property as such, prior to the return
of *nulla bona,* by the latter. The obligors may have
chosen in their common law bond, to recognize Bates
alone as sheriff; or to bind themselves to deliver to
him, or his *personal* representatives individually, and
have used the designation, *sheriff of Mobile county,* only
as *descriptio personæ.* At least, I think (without de-
ciding whether that would be sufficient) that the
necessity, if any, for the variance between the terms
of the condition, and the breach assigned, should have

been shewn and explained, by proper averments in the declaration.

These views of the case are perfectly consistent with the argument of the plaintiff's counsel, that a party can not be permitted to aver an intention, different from that imported by his acts, or the expressions of his deed.

Another serious objection to the recovery, in the manner and form here sought, is, that the bond is in the nature of a replevy bond, for property attached. The statute, authorising such replevy, in all cases, except one, requires the sheriff to permit it, on bond with sufficient security, as in case of *special bail;* the exception is in the case of *absconding* debtors; in this only, is the sheriff authorised to require a bond for the return of the specific property, or the payment of the judgment. Nothing appears of record to show, that *Stowe,* was charged as an *absconding* debtor: if he was not, and the sheriff had taken from him, a bond in the form of this, no doubt it would have been adjudged, oppressive, illegal, and void, as in the case of *Syme* vs. *Griffin.* If so in relation to the defendant, I should consider it no better in reference to his volunteer friend, or any indifferent person, who has been permitted to replevy. Therefore, I am of opinion, the declaration does not disclose a legal and sufficient cause of action ; consequently, that the judgment below must be affirmed.

By Mr. Justice THORNTON:

This was an action of debt, brought upon a bond; which, from the declaration and pleas, appears to have been executed in consideration of a surrender to the defendants in error, who were also defendants in the Court below, of certain property, which had been at-

tached by one James Bates, as sheriff of Mobile county, by virtue of a writ to him directed, at the suit of the plaintiff, against one Daniel Stowe; the condition of which bond was, the return of the said property upon the determination of the suit, or to pay and satisfy such judgment as might be rendered therein.

The declaration avers the determination of the suit, and the failure of the defendants to re-deliver the property to the sheriff of said county, or to pay and satisfy the judgment of the Court

The only plea, which is brought in review before this Court, contains, in addition to the circumstances above set forth, these further allegations, viz. that it was not intended, that the bond should be delivered to the obligee, who is the present plaintiff; that it was delivered up to him by the sheriff Bates, without the privity or consent of the defendants; that they were not notified of the determination of the suit, nor requested to deliver up the said property, or to pay the said judgment. The illegality of the bond, on the score of its defective, or vitious consideration, is not relied upon distinctively, as a matter of defence. To this plea, the plaintiff demurred, and upon that, judgment was rendered for the defendants; from which a writ of error is prosecuted to this Court, and it is assigned as error, that the Court below overruled the demurrer, and gave judgment for the defendants.

The first question which naturally presents itself, is the validity of the plea, the matter of which may be comprised in two propositions:

First—that the bond is void for want of delivery; and,

Secondly—that no notice of the happening of the contingency, upon which the duties specified were to arise, was given, or demand made of compliance.

But from the view, which I take of the case, it will be unnecessary to bestow any consideration upon the plea. It is very properly contended for, on the part of the defendants, that the effect of the plaintiffs demurrer, is to bring his declaration to the test; and if that be found insufficient, the demurrer should have been overruled, as it was; for, a plea, though bad in itself, is good enough for a bad declaration. Thus, then, we are led to consider the plaintiff's declaration; with regard to which, the main matter urged against it, is, that the bond, which is the foundation of it, will not sustain the action. The first question in relation to the bond, is, whether it is valid as a statute bond, in pursuance of the act, authorising the replevin of property taken in attachment, which, in all probability, it was at the time intended to be. This question is settled in the negative, by the cases of *Cummins & Foster* vs. *Gray* and *Adkins, et. al.* vs. *Allen,* heretofore decided by this Court. The sheriff should have been the obligee in the bond, and not the plaintiff in the attachment. It was not executed by the defendant in the attachment, or by his agent or attorney; nor by the defendants in this suit, as claimants to try the right: and by the decision first above cited, that part of the act, which would seem to authorise the commitment of the property so taken, to other persons, is limited in its application, to proceedings before justices of the peace; which construction of the several acts upon the subject, as they then stood at least, we are not now disposed to disturb. The next and most important enquiry in the cause is, whether the bond executed under the circumstances disclosed in the recited condition, is valid as a Common Law obligation. The surrender of the property by Bates the sheriff, which must be conceded to be the consid-

eration of the instrument, was evidently contrary to his duty. It was in violation of the rights of both parties in the attachment, thus to divest himself of its control. The defendant, in that action, had a right to reclaim the property, by the execution of a bond appropriate to the nature of the case, either a bail bond, if a non-resident, or a common replevin bond, if an absconding debtor; which by the act of the sheriff, he had rendered impracticable. So the plaintiff had a right to demand, that the property should have remained impounded in his hands, until such legal warranty was furnished for his benefit. Thus then, whatever may have been the inducement, or motive in the minds of the parties between whom it was concocted, the consideration, and the effect of this bond, were, a dereliction of duty on the part of the officer, and a violation of the rights of both the parties litigant in the attachment.

A bond taken or executed against a positive prohibition of a statute, is clearly void: so if it be substantially variant from the statute, with the provisions of which, it was intended to comply; it will be inoperative as a statute bond. But if it be not in express violation of any statute, though it may differ from it so materially as to be invalid as a statute bond, yet if voluntarily executed, it will be good as a Common Law bond, if neither the consideration, nor the promise, be in conflict with its principles. Now this bond is not expressly forbidden by any statute; nor is it taken in conformity with any. Its validity then must be tested by the principles of the Common Law. One of the best settled rules of that law is, that, wherever the consideration of a promise, or the promise itself, which is the consequence, or effect of the consideration is illegal, there the bond is void. As

to what constitutes such illegality in the considera-
tion as will avoid the contract, or agreement, it is said,
that a contract is unlawful in the proper sense, if it
be the object to induce the omission of something,
the doing of which is a duty in the person with whom
it is made.[a]  And again, in page 119 of the same au-
thor, it is said, a contract or agreement is unlawful in
the proper sense, if it be to encourage unlawful acts,
or omissions; and to illustrate these rules, he puts the
case of a sheriff who had levied four oxen by virtue of
a writ of *withernam*, and returned them to the defen-
dant, upon his bond, given to indemnify him concern-
ing the oxen.   The bond was held to be void, for
that the sheriff ought to have kept the property; and
the bond was made to aid him in the violation of his
duty.   The general doctrine indeed is admitted, but
it is contended, that in the case of a sheriff, an ex-
ception to it, has been established and recognised by
reported cases, which in their principle, embrace the
present, and maintain the validity of this bond.  This
has led me into an examination of all the cases with-
in my reach, touching this matter, comprising many
of a very early date, as well as of more recent adjudi-
cation.   The result of my enquiries has been, that
though there may be some apparent conflict of au-
thorities, yet the general tenor of them is adverse to
the exception, upon the existence of which, as it seems
to me, this bond can alone be sustained.

The cases are numerous to the points, that a bond
or promise is void, if against a statute: and that,
though not in conformity with any statute, yet it will
be upheld as a Common Law obligation, unless in
conflict with its principles.   But there is a dearth of
cases, comparatively, in which the question directly
arises, whether a promise or bond is valid which has

[a] 1 Pow. 113.

been taken in consideration of the commission, or omission of an act, by an officer, contrary to his official duty.

Of the cases above alluded to, I will take a brief review, commencing with *Beawfage's case*, reported in 10 *Coke*. It was there held, that a sheriff may take a bond from a defendant, against whom he has a writ of *fieri facias* to pay the debt, at the return of the writ. In this case, the reporter says, the doubt which was conceived upon it was, upon the general words of the act of 23d Hen. VI, chap. 10. The bond was held to be valid, and not embraced by the statutory prohibition. The adjudication does fairly imply, not only that the bond was not void as being prohibited by the statute, but also that it was not void for any defect in its consideration. For although the main question was, whether the statute prohibited its execution, yet if it had been void at Common Law, it would doubtless have been so ruled. And besides, it is expressly affirmed in the case, that it had been ruled on another occasion, that such a bond was not void at the Common Law. This case then, either recognises the exception to the general rule as above stated, or the consideration of the bond was not illegal. It does not appear what the consideration of this bond in Beawfage's case, or in the case cited in it, was. It may have been in consideration of a return of property, already levied by the Sheriff in virtue of the *fi. fa.* or in consideration that he would not levy; or it may have been without either, but a promise or covenant, made in consideration of the existing duty or indebtedness. Now if the last mentioned were the consideration, it was indubitably legal, and as it does not appear to be otherwise, the case can not be relied upon as conflicting with the doctrine, or *illustra-*

tion, cited from *Powell.* If the consideration had been a return of property levied, to the defendant in the writ, it would seem that even this would have been a valid consideration, and not an illegal one, as was held in 1 *Salk.* 32, which latter case has also been relied upon as establishing the exception of the case of sheriffs, frcm the general rule of law. This last case, was an assumpsit to the officer, to pay him the debt, in consideration of a return of goods actually levied. Upon demurrer, it was endeavoured to be assimilated to the case where the consideration was to permit the prisoner to escape, who was in custody on a *capias;* but the Court held, *contra*: "by the *capias* he is to *take* the body, and *keep* in *salva custodia,* and to give liberty, is contrary to the writ: but that is now to raise the money; and the sheriff may, upon a *fi. fa.* sell the goods, and this is no more in effect." So that the principle of this decision in *Salkeld,* rather maintains the general rule as applying to the sheriff, than establishes the exception; for the reasoning is, that the sheriff did not transgress his duty, and therefore was allowed to recover.

In the case of *Arundel* vs. *Gardiner,*[a] which has [a Cro. Jas. 652] been relied on for the same purpose, it was held, that if a plaintiff in a writ of execution delivered by him to the sheriff, affirm to the sheriff that certain goods are the property of the defendant in the writ, liable to the execution, and require him to execute it, he shall be held liable, on a promise to execute a bond of indemnity for a seizure of the goods, notwithstanding the sheriff was a trespasser in making the levy, which was the consideration of the promise. The objection to the consideration of this promise was urged in defence, but "*non allocatur;* for he shewing the goods, and requiring the sheriff to do execution, it is rea-

65

sonable that he should save him harmless; and a
promise to that purpose is good enough." That the
act done by the sheriff here, which was the consid-
eration of the promise, was a tort, and contrary to his
duty, the case shews; for a recovery was had against
him by the owner of the goods : and yet the reason-
ing of the Court will shew, that the principle of the
case, is not opposed to the doctrine as laid down by
*Powell.* The principle of the case is, that the con-
duct of the plaintiff in the writ, who was defendant
in the case, operates as an estoppel, preventing him
from taking advantage of the illegal nature of the
consideration of the promise. As where A, is about
to pay value for an obligation upon B, which is a for-
gery; and applying to B, it is affirmed by him, that
the signature is genuine; here, if sued upon this bond,
B will not be permitted to defeat a recovery, by al-
leging the forgery; for he has induced A to take it;
and it is reasonable that he should pay it. Still the
doctrine would be unimpugned, that a forged bond
is void in law. Subsequent to this last determina-
tion in *Cro. James,* in the 33d of *Eliz.* (*Mead* vs *By-
gott* reported in *Cro. Eliz.* 230,) the doctrine was set-
tled in accordance with the general rule of the Com-
mon Law, in a case somewhat analagous to that un-
der our consideration; both being cases of attachment,
where the duty of the officer is to keep the property,
or to dispose of it, in a definitely prescribed manner.
One Stokes was attached by two quarters of corn, at
the plaint of the defendant in the case, to whom the
bailiff delivered the corn, upon a promise to save the
bailiff harmless of the same. Upon assumpsit brought
on the promise, in arrest of judgment it was moved,
that the consideration, and the promise were against
law, and void; and so was the opinion of the Court;

"For, first, attachment cannot be of corn out of sacks—(by statute of 10 Will. III.) And secondly, if it may, it is to be kept by the bailiff; and he ought not to deliver it out of his hands to the party plaintiff; and so, the promise is against law and void." Now in the second resolution in this case, the illegality of the delivery out of his hands, upon the terms disclosed, as it seems to me, is the ground of the decision.

It cannot be denied, that the custody by a bailee of the officer, is the custody of the officer himself; for it would be too inconvenient, if not impossible, to require the exclusive personal custody by an officer of all the effects, which by virtue of his office, may come into his hands; and the plaintiff in the attachment, being selected as such bailee, would make no difference in the case. But it can be no longer his custody, where, as in the case last cited, he so disposes of the property, as that he cannot reclaim it to satisfy the exigencies of justice, but relies on the bond of the bailee to save him harmless from the consequences of the illegal act of surrender. From this view of the law of the case, I have been led to the conclusion that the demurrer was properly overruled.

Reference was made by the counsel for the plaintiff, to a case in 1 *Littell's Selected cases*, 273, which was pressed with much force of argument, as being decisive of the validity of the bond sued upon in this case. Upon an examination of that case, I apprehend the just extent of its authority to be, that a bailee of property to whom the sheriff has warrantably committed the custody of it, may execute a bond to indemnify the sheriff against the consequences of his, the bailee's refusal to re-deliver it, when it was properly demandable, and unjustly detained. In this proposi-

tion there is nothing exceptionable, for the consideration was legal, and the bond only binds him to do, what without it, was his moral and legal duty. The Court, *arguendo*, I acknowledge, do intimate the opinion, that even if the surrender of the property to the said bailee had been in violation of the duty of the officer, and illegal, yet that the case of a sheriff constitutes an exception to the general rule of law, and that the bond would be good. But I do not recognise the justness of this conclusion from the authorities which they cite to maintain it.

The judgment of the Court below must be affirmed.

Mr. Justice HITCHCOCK not sitting.